UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TAMIE M. LUTY,

        Plaintiff,

                                              Case Number 06-11720-BC

v.                                            Honorable Thomas L. Ludington

CITY OF SAGINAW, and GERALD CLIFF,

        Defendants.

_____/

**OPINION AND ORDER DENYING PLAINTIFF'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, DENYING PLAINTIFF'S MOTION FOR ATTORNEYS FEES, AND DENYING DEFENDANTS' MOTIONS FOR JUDGMENT AS A MATTER OF LAW AS MOOT**

The plaintiff, Tamie Luty, a lieutenant with the Saginaw Police Department, initiated this action on April 7, 2006 alleging that her supervisor, Chief of Police Gerald Cliff, and employer, the City of Saginaw, Michigan violated her civil rights under the United States Constitution and Michigan law. Specifically, she asserted that Cliff and the City had retaliated against her for speaking out on matters of public concern in violation of the First Amendment; that Cliff and the City also took adverse employment action against her because of her gender and otherwise subjected her to a hostile work environment targeting her status as a woman in violation of the Fourteenth Amendment; she was retaliated against for making complaints of gender discrimination, Mich. Comp. Laws § 37.2101 *et seq.*, and for filing a claim under the Workers Compensation Disability Act in violation of state law, Mich. Comp. Laws § 418.101 *et seq.*; and she was discriminated against on the basis of her gender in violation of state law, Mich. Comp. Laws § 37.2101 *et seq.*

The matter went to trial on May 29, 2007. On June 11, 2007, the jury returned a special verdict finding that Cliff undertook adverse employment action contrary to the First Amendment

against the plaintiff because of her expression of her refusal to take a polygraph examination, but also finding that he would have taken that action even if the plaintiff's protected speech had not been considered. The jury determined that the plaintiff had no cause of action with respect to her remaining claims, and the plaintiff was awarded no damages.

Presently before the Court are several post-trial motions filed by the parties: two motions by the defendants for judgment as a matter of law, a renewed motion for judgment as a matter of law by the plaintiff, and a motion for attorney fees by the plaintiff under 42 U.S.C. § 1988. The Court has reviewed the parties' submissions and heard oral argument on July 12, 2007. The Court now concludes that the defendants' motions are moot in light of the jury's verdict and the plaintiff's motions lack merit. Therefore, the defendants' motions for judgment as a matter of law will be denied as moot and the plaintiff's renewed motion for judgment as a matter of law and motion for attorneys fees will be denied.

I.

The primary issue presented by the plaintiff's renewed motion for judgment as a matter of law concerns a theory of First Amendment liability that was not fully articulated until the eve of trial. Initially, in count two of her complaint, the plaintiff alleged the following theory as the basis for her First Amendment claim:

**COUNT II – VIOLATIONS OF THE 1ST AMENDMENT**

. . .

99. That as set forth more fully above, and October 19, 2005, the Plaintiff complained about disparate treatment and gender discrimination to which she was subjected and specifically reported these complaints to Ralph Carter, Labor Relations Administrator for the Defendant.

100. That Defendants[] retaliated against Plaintiff for making these complaints as set forth more fully above and these retaliatory actions violated Plaintiff's 1st Amendment rights because she complained about a matter of public concern which outweighed the City's interest in a harmonious work environment.

> 101. That Plaintiff had a constitutional right under the 1st Amendment to be from retaliation for reporting violations of her civil rights.
>
> 102. That Defendants' actions in retaliating against the Plaintiff were intended to have a chilling effect upon a person of ordinary stature from continuing to engage in the protected activity of reporting sexual harassment and discrimination by Defendants.
>
> 103. That Defendants' actions have proximately resulted in Plaintiff's economic loss, and also mental anguish, nervousness, as well as humiliation and embarrassment.

Pl.'s Compl. at ¶¶ 99-103.

On May 24, 2007, however, four days before trial was to commence, the plaintiff articulated a theory of First Amendment liability, allegedly identified during discovery, in a pretrial motion for judgment as a matter of law: Cliff and the City retaliated against her, she alleged, because she allegedly refused to submit to a polygraph exam. The factual background may be summarized as follows.

On June 6, 2005, the Saginaw City Council met to discuss a budgetary matters associated with the police department. The following day, police chief Gerald Cliff held a meeting of his command officers, which included the plaintiff. At the meeting, Cliff voiced his belief that certain council members would further cut the police department budget. He also made derogatory comments about those members. On June 9, 2005, counsel members met again. Council member Roma Thurin was in possession of a transcript of Cliff's comments and produced it to the council and ultimately to the press. The comments apparently were verbatim and believed to have been secretly taped.

The following day, Cliff held another meeting with his command officers. The officers, including the plaintiff, agreed voluntarily that they would submit to a polygraph examination in an

effort to exonerate themselves. Cliff informed the officers that he could not require anyone to take a polygraph. Indeed, it appears that noone at the City solicited the agreement to take a polygraph examination.

Thereafter, the plaintiff after speaking with her husband, who was affiliated with the Michigan State Police, decided that she would not take the exam. Sometime the next week, she informed her union representative, Sergeant Mark Lively, that she did not want to take the polygraph exam because she felt it was a violation of the collective bargaining agreement and violated state law.

Before any polygraph could begin, however, it was determined that the process would be cost prohibitive for all officers. Instead, command officers agreed to a "scan test," a series of written questions culminating with face-to-face interviews. If an officer was not successful at the scan test, only then did he or she become a candidate for a polygraph exam.

Pursuant to an order issued by the Chief of Police in 2002, the unauthorized, non-consenual taping of police personnel is a violation of work place policies. As a result, Cliff launched an internal affairs investigation into the taping incident. Sergeant Kevin Revard and Sergeant Terri Johnson-Wise were chosen to head the operation because they were the only two command officers that had not been at the June 7, 2005 meeting. They interviewed all command staff at the meeting.

When they interviewed Sergeant Lively, Lively informed them that the plaintiff had confessed to secretly tape recording Lively several months earlier. The plaintiff, according to Lively, also had recorded a conversation with Sergeant Tuer without that officer's consent or knowledge. In fact, the 2002 order issued, former Chief of Police Donald Pussehl told interviewers, in response to information he received from Deputy Chief McGarrity that the plaintiff was secretly

taping conversations in her office with other officers.  The plaintiff acknowledged that she had recorded conversations with McGarrity and others.

The investigation concluded with a report issued by Revard and Johson-Wise.  They wrote:

> Based on the statements taken from Sgt. Lively, former Chief Don Pussehl, and Lt. Luty's reluctance to participate in the written questionnaire, suspicion does point to Lt. Luty as the person who may have secretly tape[] recorded the meeting held on June 5, 2007.  However, due to the lack of direct evidence, these investigators are unable to determine who secretly tape-recorded the meeting held on June 7, 2005, and the had it transcribed and sent to City Council Person Roma Thurin.

Tr. Ex. 216.

At trial, Cliff testified that based on a preponderance of evidence, he determined that Luty was responsible for the tape recording and just cause existed to discipline her.  He stated that he had reviewed the internal affairs report along with other information.  He testified that Lively's statements that Luty previously had secretly taped conversations factored heavily in his decision above all because Lively was union president and a known supporter of Luty.  In addition, Cliff considered the plaintiff's statement that she would do anything to protect her position when she was informed of a transfer from the detective bureau to patrol services.  Cliff did admit, however, that the plaintiff's refusal to participate in the "scan test" process was a factor in reaching his conclusion.

Cliff chose to demote the plaintiff, he explained, instead of taking other disciplinary actions, because of the plaintiff's disregard for the policy prohibiting non-consensual, unauthorized recordings.  Because of the devastating effect on the department the leak had in Cliff's mind, he felt that he should sent a "strong message."  He recommended the demotion to Ralf Carter, the City's Labor Relations Administrator, who disagreed with that course of action.  However, City Manager Cecil Collins ultimately made the decision to demote the plaintiff because it had "been determined

that [the plaintiff] was the person that secretly recorded the June 7, 2005 meeting and forwarded the transcribed copy to a Council Person." Tr. Ex. 8.

Thereafter, the plaintiff filed a grievance under the collective bargaining agreement. On October 11, 2005, Ralph Carter, acting as designee for the new City Manager, Darnell Early, granted the plaintiff's grievance at Step IV, the answer portion of the grievance process. The matter did not proceed to arbitration.

## II.

The standard of review for a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) is governed by the same standard as motions for summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). This Court must "direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict" or if there is insufficient evidence to create a genuine issue of fact for resolution by a jury. *Ibid.* Stated otherwise, if after viewing the evidence in the light most favorable to the non-moving party, "a reasonable trier of fact could draw only one conclusion," judgment should be granted for the moving party. *American & Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 157 (6th Cir. 1997).

### A.

Although the defendants' motions for judgment as a matter law technically are moot in light of the jury's verdict, after reflection on the plaintiff's novel theory of First Amendment liability – her expression of the basis of her decision to refuse a polygraph examination – the Court is circumspect about the theory.

As is well-established, a claim of retaliation in violation of the First Amendment requires a showing that "(1) [the plaintiff] engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against [her] that would deter a person of ordinary firmness from

continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by [her] protected conduct." *Scarborough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006) (citation omitted).

Under this framework, the Court must consider whether an employee's speech "may be fairly characterized as constituting speech on a matter of public concern." *Rose v. Stephens*, 291 F.3d 917, 920 (6th Cir. 2002) (citation and internal quotations omitted); *see also Connick v. Meyers*, 461 U.S. 138, 142 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968). As the Sixth Circuit has emphasized "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Matulin v. Lodi*, 862 F.2d 609, 612 (6th Cir. 1988) (citation and internal quotations omitted). The inquiry has been framed as follows:

> [O]ur circuit has distilled the "public concern" test by stating that the court must determine: the "focus" of the speech; "the point of the speech in question"; "to what purpose the employee spoke"; "the intent of the speech"; or "the communicative purpose of the speaker." . . . As a corollary to this "focus" test, we have held that the proper inquiry is *not* what might be "incidentally conveyed" by the speech, and that "passing" or "fleeting" references to an arguably public matter do not elevate the speech to a matter of "public concern" where the "focus" or "point" of the speech advances only a private interest.

*Farhat v. Jopke*, 370 F.3d 580, 592-593 (6th Cir. 2004) (citations omitted); *Dambrot v. Central Michigan University*, 55 F.3d 1177, 1186-1187 (6th Cir. 1995) (focusing on the communicative purpose of the speaker, rather than incidents of the manner of expression, to assess whether the speech reached a matter of public concern).

A matter of public concern includes "any matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. Internal quarrels about personnel and performance do not reach a level of public concern and, so, receive no First Amendment protection. *Rodgers*, 344 F.3d

at 597. *See also Jackson v. Leighton*, 168 F.3d 903, 911 (6th Cir. 1999) (refusing to afford First Amendment protection to the "quintessential employee beef" of management's incompetence) (citation omitted)

The plaintiff couched her argument that a First Amendment violation occurred in the following terms:

> In the present case, Plaintiff engaged in a protected activity when she refused to submit to a polygraph examination which was illegally solicited by the Defendants in violation of the Michigan Polygraph Protection Act of 1981. Specifically, it is a criminal offense under the Polygraph Protection Act for an employer, including a government employer, to request or require an employee to take or submit to a polygraph examination as a condition of employment, promotion, or change in status of employment, or as an express or implied condition of a benefit or privilege of employment. See MCL §37.203(1)(a). It is also a criminal offense under the Act for an employer to administer, cause to be administered, threaten to administer, or attempt to administer a polygraph examination to an employee. See MCL §37.203(1)(b). It is likewise illegal under the Act for an employer or employment agency to share with any other person information which communicates the results or analysis of an employee's polygraph examination or the fact that an employee refused to submit to a polygraph examination. See MCL §37.205.

Pl.'s Mot Judgment as a Matter of Law at 5-6.

The plaintiff presumes that she engaged in protected activity under the First Amendment because the Polygraph Act criminalizes an employer's *requesting* a polygraph examination. The mere fact that a criminal violation may have occurred and an adverse employment action taken in part on the basis of an inference of that violation does not necessarily convert her statement into protected speech for purposes of the First Amendment. The issue here developed not because of the plaintiff's assertion of a violation of state law. It developed because her decision to refuse the test was a factor considered by Cliff in responding to a policy violation that the plaintiff agreed was unacceptable behavior.

The investigating officers' communication of the plaintiff's reluctance to undergo the scan

-8-

test process to Cliff might be construed as a violation of the Polygraph Act, Mich. Comp. Laws § 37.205 (prohibiting an employer or employment agency to share with any other person information which communicates the results or analysis of an employee's polygraph examination or the fact that an employee refused to submit to a polygraph examination), but the Court is far less persuaded that Cliff's decision to demote the plaintiff was based on the content of her speech, rather than its implications for an unrelated employment principal, than the Court was earlier.

B.

In her renewed motion for judgment as a matter of law, the plaintiff argues that there was insufficient evidence to permit the jury to consider whether Cliff had proved by a preponderance of the evidence that he would have taken the adverse action even if he had not considered the plaintiff's expression of her refusal to take the polygraph examination. The Court cannot agree.

When a plaintiff satisfies the elements of First Amendment retaliation claim, the Sixth Circuit has explained, the defendant "may rebut the claim by establishing, by a preponderance of the evidence that they would have taken the same action even in the absence of the protected conduct." *Evans-Marshall v. Bd. of Educ. of Tipp City Sch Dist.*, 428 F.3d 223, 228 (6th Cir. 2005); *Cockrel v. Shelby Co. Sch Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001). Indeed, this burden shifting framework derives from the Supreme Court's decision in *Mt. Healthy City Sch Dist. Bd of Educ. v. Doyle*, 429 U.S. 274 (1977). In that case, the plaintiff sustained his burden that he had engaged in protected speech and that his speech was a "substantial" or "motivating factor" in the defendant's decision not to rehire him. In the Court's view, however, "the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected

conduct." *Id.* at 287.

The plaintiff maintains that the evidence permits only one conclusion – that Cliff's decision to demote the plaintiff was motivated by her expression of her decision to forego a polygraph. This contention merits only cursory discussion. The Court and the jury had the benefit of several hours of Cliff's testimony as to his motivation for demoting the plaintiff. Aside from plaintiff's decision not to participate in the scan test, Cliff stated that he factored into his decision evidence that the plaintiff had secretly taped conversations in violation of a 2002 order and as recently as a few months before the leak. In fact, it was the plaintiff's past conduct of recording conversations that gave rise to the 2002 order in the first instance. In addition, Cliff testified that the plaintiff stated her intent to do whatever she had to protect her position. Finally, Cliff stated that the scan test was only a small consideration in light of the other evidence that suggested the plaintiff secretly taped the June 2005 meeting.

Plainly, the jury could have rejected Cliff's testimony as not worthy of credit. Equally as plausible, however, is that the jury could have believed Cliff's reasons that had nothing to do with a polygraph and determined that those considerations outweighed the small role, Cliff testified, the scan test played into his calculus. In other words, in light of Cliff's testimony and the plaintiff's testimony at trial, there was a genuine issue of material fact that was properly submitted to and properly resolved by the jury.

The plaintiff makes a final challenge to the sufficiency of the evidence. She claims that the doctrine of collateral estoppel should have prevented the other reasons Cliff gave for her demotion from coming into evidence. She reasons that Carter ultimately granted her grievance and that action was conclusive of the issue of Cliff's motivation. The Court is unpersuaded.

The plaintiff chose to raise the point for the first time in a renewed motion for judgment as a matter of law, not by way of a pretrial motion *in limine* or contemporaneous objection. At any rate, the doctrine of collateral estoppel does not apply to Carter's decision because the issues were not "actually litigated." *Kowatch v. Kowatch*, 179 Mich. App. 163, 168, 445 N.W.2d 808 (1989); *Porter v. City of Royal Oak*, 214 Mich. App. 478, 485, 542 N.W.2d 905 (1995) (reasoning that collateral estoppel "applies to factual determinations made during grievance hearings or arbitration proceedings." Carter's determination occurred at Stage IV of the grievance process, *prior* to any hearing or arbitration proceeding. Even assuming that issues decided at grievance hearings or arbitration proceedings would have preclusive effect in a later filed civil rights action, Carter's decision was not the product of any litigation. The Court therefore concludes that the doctrine of collateral estoppel does not apply on this record.

C.

Finally, the plaintiff believes that she is a prevailing party and therefore entitled to attorneys fees because the jury concluded that Cliff retaliated against her in violation of the First Amendment. As noted, the jury also found that Cliff would have taken the adverse action in the absence of the plaintiff's expression of her refusal to take a polygraph exam.

Section 1988(b), Title 42 of the United States Code gives the Court discretion to award attorneys fees to a prevailing party in a section 1983 case:

> In any action or proceeding to enforce a provision of section . . .1983 . . of this title . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]

However, at a minimum, the concept of a "prevailing party" suggests that a plaintiff "receive at least some relief on the merits of [her] claim." *Hewitt v. Helms*, 482 U.S. 755, 760 (1987). As the

Supreme Court has explained, "that the defendant has violated the Constitution, unaccompanied by an enforceable judgment on the merits does not render the plaintiff a prevailing party. Of itself, the moral satisfaction that results from any favorable statement of the law cannot bestow prevailing party status." In this case, the plaintiff is not a prevailing party. Although the jury did find that Cliff violated the Constitution, the jury concluded that Cliff would have undertaken the same action in the absence of the violation. Thus, the plaintiff is not entitled to an enforceable judgment on the merits of her claim, and therefore no attorneys fees are appropriate.

### III.

The Court concludes that the plaintiff's renewed motion for judgment as a matter of law lacks merit in light of the conflicting evidence presented at trial as to Cliff's motive for demoting the plaintiff. The jury therefore properly considered whether Cliff would have demoted the plaintiff in the absence of her expression of her refusal to take a polygraph exam. Finally, the plaintiff cannot be considered a "prevailing party," and the Court may not exercise its discretion to award attorneys fees.

Accordingly, it is **ORDERED** that the plaintiff's renewed motion for judgment as a matter of law [dkt # 51] and motion for attorneys fees [dkt #53] are **DENIED**.

It is further **ORDERED** that the defendants' motions for judgment as a matter of law [dkt #s 41, 42] are **DENIED** as moot.

It is further **ORDERED** that the plaintiff's motion for judgment as a matter of law and renewed judgment as a matter of law [dkt #s 33, 40] are **DENIED** for the reasons stated on the trial record.

It is further **ORDERED** that the motion to quash filed by a third party [dkt # 35] is **DENIED** as moot.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: July 25, 2007

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 25, 2007.

s/Tracy A. Jacobs  
TRACY A. JACOBS